

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00223-CR

_____


LAVERN TCHEFUNCTE DURDEN, A/K/A
TCHEFUNCTE DURDEN, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 08-0182X


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter
Dissenting Opinion by Justice Moseley

OPINION

In his version of the circumstances leading to his arrest, Lavern Tchefuncte Durden, a/k/a, Tchefuncte Durden, was taking a shortcut across a vacant lot on his way to mow the lawn at his church when he encountered a wheelbarrow filled with copper wire. Thinking that a friend of his would find a use for the wire, Durden testified that in an effort to assist a friend, he took possession of the wire-filled wheelbarrow and continued toward the church. Durden's altruistic intentions were thwarted, however, when he encountered a Marshall police officer on his way.

The policeman disbelieved Durden's story and arrested Durden, charging him with theft of the copper wire; Durden was convicted by a jury.

Durden now appeals, contending in a single point of error that the trial court erred by refusing to submit a mistake-of-fact instruction in the court's written jury charge. We agree the trial court erred, but under the requisite standard of review we conclude Durden suffered no actual harm as a result of that error.

I.      **The Standard of Review for Alleged Jury Charge Error and the Relevant Penal Code Offense**

Our review of the charge first requires us to determine whether there is error in the jury charge. If there is error, then we next determine "[i]f the error in the charge was the subject of a timely objection in the trial court . . . ." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). If the appellant raised a timely objection in the trial court to the error, then the appellate court must reverse the trial court's judgment if the error "is calculated to injure the rights

2

of the defendant." TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006); *Almanza*, 686 S.W.2d at 171. This standard requires proof of no more than "*some* harm to the accused from the error." *Almanza*, 686 S.W.2d at 171. If the appellant did not raise the error at trial, then the appellant can prevail "only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Id.* "In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

Under our law, a person commits the offense of theft when that person "unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2008). That appropriation is unlawful if, among other things, "it is without the owner's effective consent" or if "the property is stolen and the actor appropriates the property knowing it was stolen by another[.]" TEX. PENAL CODE ANN. § 31.03(b) (Vernon Supp. 2008).

Our law provides the following as one of many defenses to criminal responsibility:

> (a) It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.

> (b) Although an actor's mistake of fact may constitute a defense to the offense charged, he may nevertheless be convicted of any lesser included offense of which he would be guilty if the fact were as he believed.

3

TEX. PENAL CODE ANN. § 8.02 (Vernon 2003).  This mistake-of-fact defense "is applicable only if the actor's mistake affects his culpable mental state regarding commission of the offense charged." *Egger v. State*, 817 S.W.2d 183, 187 (Tex. App.—El Paso 1991, pet. ref'd) (citing *Willis v. State*, 790 S.W.2d 307, 314 (Tex. Crim. App. 1990)).

"[A]n accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense." *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); *see also Allen v. State*, 253 S.W.3d 260, 266 (Tex. Crim. App. 2008); *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987); *Sands v. State*, 64 S.W.3d 488, 494 (Tex. App.—Texarkana 2001, no pet.); *Pennington v. State*, 54 S.W.3d 852, 856 (Tex. App.—Fort Worth 2001, pet. ref'd).  The rule is designed to ensure that the jury, not the judge, will decide the relative credibility of the evidence. *Sands*, 64 S.W.3d at 494.  "To be entitled to a defensive instruction, the defensive issue raised by the evidence must be an issue that both is established by the penal code and is applicable to the charged offense." *Willis*, 790 S.W.2d at 314–15 (Tex. Crim. App. 1990).  The defendant's testimony may be, by itself, enough to warrant the issuance of a requested defensive instruction. *Hayes*, 728 S.W.2d at 807.

In assessing whether the trial court erred by denying a requested defensive instruction (such as one on mistake of fact), an appellate court must examine the evidence offered in support of that defensive issue in the light most favorable to the defense. *Almanza*, 686 S.W.2d at 171; *Pennington*,

54 S.W.3d at 856. "Even when the defendant does not testify, there may be enough evidence to warrant a charge on a defensive issue." *Pennington*, 54 S.W.3d at 856 (citing *Smith v. State*, 676 S.W.2d 584, 585, 587 (Tex. Crim. App. 1984)). "When evidence from any source raises a defensive issue, and the defendant properly requests a jury charge on that issue, the trial court *must* submit the issue to the jury." *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993) (emphasis added).

## II. The Evidence and the Trial Court's Ruling on Durden's Requested Mistake-of-Fact Instruction

Durden testified in his own defense. As related above, Durden told the jury that he was on his way to mow the grass at Galilee Baptist Church on St. Patrick's Day 2008. The path he traveled between his home and the church was one he walked almost every morning. Part of that path took him through a trail amidst a field.

On the day in question, Durden was traveling along that trail when he came across a wheelbarrow filled with what Durden said he thought was abandoned, junk copper wire, something which had not been there on his previous walks along the trail.[1] Durden stated he then decided to take the wheelbarrow (along with its contents) and began pushing the wheelbarrow further down the pathway. Soon thereafter, Durden was seen by a police officer. Durden, according to his continuing testimony, pushed the wheelbarrow toward the officer. Durden and the officer had a discussion,

---

[1] A police officer had earlier testified that law enforcement officials believed this wire had been stolen from Paul Davis. Davis confirmed that some wire was missing from his place of business at 612 Higgins Street. Durden had been an employee of Davis until the Fall of 2007. Durden denied stealing the wire from Davis and repeatedly insisted he found the wire along the trail. Durden testifed that he daily walked up Higgins Street to get to the trail.

during which Durden told the officer about finding the wheelbarrow and its contents. The officer, however, believed Durden had stolen the wire and arrested him for theft.

On cross-examination, Durden repeatedly denied taking the wire with intent to sell it for a profit. Rather, Durden testified, it was his intention to give the wire to a local tree surveyor, who commonly used similar copper wire in his tree surveying business. Durden was nevertheless forced to admit that the field on which the wheelbarrow filled with wire had been located was not land belonging to Durden; instead, that field was owned by a man whom Durden knew to be also a member of his church, a man he called Deacon Yancey.

At the conclusion of the evidence and before the parties presented closing arguments, Durden requested a jury instruction on mistake of fact:

> DURDEN: Judge, on mistake of fact, we would just request an instruction in regards to that.
> As the Penal Code shows, that it is a defense to prosecution that the act, through mistake, formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.[2]
> My argument is, Judge, that he testified that he did not take the copper from Paul Davis, that he found it, apparently, abandoned, and in his mind, thought it was abandoned and that he just moved it a short distance thinking it was abandoned.
> And because of that, we would request mistake of fact.

The trial court denied the request, commenting,

> THE COURT: All right. To me, that's an inferential rebuttal. I mean, they're either going to believe him or the other evidence.
> So that request is denied.

---

[2]This is an accurate description of the content of the mistake-of-fact defense as it would apply in this case. TEX. PENAL CODE ANN. § 8.02(a).

Bring the jury in.

This statement by the trial court suggests that although she agreed there was some evidence that (if believed by a jury) would negate the culpable mental state of the charged crime, the trial court further believed that this mistake-of-fact question would be resolved by the jury during the normal process of weighing the conflicting evidence. In other words, since the jury was instructed that "A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of the property," it would necessarily have to disbelieve Durden's claim of mistake of fact before the jury could determine he had an intent to deprive. Thus, the trial court seems to have believed that submitting a mistake-of-fact instruction would have been merely an unnecessary or redundant gesture.[3] Based on that apparent conclusion, the trial court denied Durden's request.

## III. Other Appellate Mistake-of-Fact Instruction Cases

In *Willis v. State*, the Texas Court of Criminal Appeals discussed a hypothetical situation in which a defendant testified that he believed certain items he had purchased were items that had been honestly obtained by a seller of used items. In such a situation, wrote the court, the defendant's testimony serves to "negate an element of the offense of theft of receiving property stolen by another (i.e., that he obtained the items *knowing* they were stolen)." Such evidence does not negate the entire charged crime "(for he may still possess the items)"; instead, the accused "creates an issue of

_____

[3]In this belief, the trial court was allied with Chief Justice Cornelius, who expressed the same view in a concurring opinion in *Sands*. *Sands*, 64 S.W.3d at 497.

mistaken belief as to only the culpable mental state element of theft. In such circumstances, the defendant would be entitled to a defensive instruction of 'mistake of fact . . . .'" 790 S.W.2d at 314.

In *Sands*, this Court agreed with the appellant's contention that the trial court erred by failing to give a mistake-of-fact jury instruction. We reached this conclusion after a concise discussion of several of the Texas Court of Criminal Appeals' then-recent decisions regarding the entitlement of defendants to receive such instructions, and each of those cases reached the conclusion that the trial courts had erred by not giving the requested instruction. We further wrote,

> Thus, in accordance with the decisions from the Court of Criminal Appeals and the statute being interpreted, an instruction on the mistake-of-fact defense should be given when evidence raising the issue of whether the actor formed a reasonable belief about a matter of fact, if his mistaken belief negated the kind of culpability required for the commission of the offense. Even if this instruction is repetitive to the required proof that the jury find beyond a reasonable doubt that Sands intentionally and knowingly committed this required element of the crime, this statute as interpreted by the Court of Criminal Appeals requires that such an instruction be given to the jury.

64 S.W.3d at 495.

In *Bang v. State*, the Thirteenth Court of Appeals held the appellant had been erroneously denied a mistake-of-fact instruction "because appellant claimed not to know that by his conduct he was participating in a burglary. When an accused creates an issue of mistaken belief as to the culpable mental element of the offense, he is entitled to a defensive instruction on 'mistake of fact." 815 S.W.2d 838, 842 (Tex. App.—Corpus Christi 1991, no pet.) (citing *Miller v. State*, 815 S.W.2d

8

582, 585 (Tex. Crim. App. 1991); and referencing *Hill v. State*, 765 S.W.2d 794, 796–97 (Tex. Crim. App. 1989)).

## IV.     The State's Argument

The State contends Durden's mistake was one of law, not one of fact. The State frames its argument on appeal by suggesting that Durden's only mistake in this case was "that he was indifferent as to who that owner [of the wire] may be . . . ." This indifference, according to the State, regarded proper ownership, which the State asserts is purely a question of law.

The State's argument attempts to frame the issue now before us in terms of the consequences that extend from what it characterizes as Durden's mistake of law. The State's thesis, however, overlooks whether Durden's testimony of mistake could have been interpreted by the jury as presenting a fact that would negate the accused's culpable mental state. We believe it is this latter framework that is required by *Almanza*. It does not matter that we on appeal might hypothetically reinterpret the evidence as suggesting that the accused was mistaken in his interpretation of the law; the review standard instead requires us only to inquire whether there is any evidence—when viewed in the light most favorable to the defense—offering support to the view that due to the appellant's claimed factual mistake, the appellant lacked the requisite culpable mental state to commit the alleged crime. This latter framework is also consistent with our opinion in *Sands*, as well as the other caselaw discussed above.

9

## V. Was There Evidence To Support Issuing the Instruction?

There was some evidence in this case that suggests Durden made a mistake of fact. Durden's own testimony (i.e., that he found the wire abandoned inside a wheelbarrow along a trail that he walked almost every day) is at least some evidence that if believed by the jury, would negate that element of the theft charge regarding the accused's intent to deprive the rightful owner of the property with possession of the property. Durden's testimony amounts to some evidence that he believed the copper wire to have been abandoned property, which (if believed) would support a jury finding that Durden lacked the intent to deprive the true owner of such property.

Under *Willis*, and consistent with our previous analysis in *Sands*, we conclude the applicable law and the testimonial evidence required promulgating Durden's requested defensive instruction on mistake of fact. The fact that the mistake-of-fact instruction requested by Durden might be viewed as repetitive to the required proof that the jury find Durden intentionally or knowingly committed the charged crime does not obviate the trial court's statutory duty to include that properly requested instruction. *Cf. Sands*, 64 S.W.3d at 495. Nor does the view that Durden's testimony might have been seen by the trial court or the jury as feeble, contradicted, impeached, or incredible undermine Durden's entitlement to a defensive instruction. *Cf. Pennington*, 54 S.W.3d at 858. The trial court erred.

## VI. Harm Analysis

Having concluded that Durden was entitled to a mistake-of-fact instruction, in order to correctly apply the proper standard of review we must next determine whether the error in the charge was the subject of a timely objection in the trial court. *Almanza*, 686 S.W.2d at 171. The appellate record answers that question in the affirmative. Accordingly, the jury charge error must be evaluated to determine whether the trial court's error was "calculated to injure the rights of the defendant." TEX. CODE CRIM. PROC. ANN. art. 36.19; *Almanza*, 686 S.W.2d at 171. That determination will, however, hinge on our assay of the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant factors. *See* TEX. CODE CRIM. PROC. ANN. art. 36.19; *Almanza*, 686 S.W.2d at 171.

A reasonable summation of the State's case suggests Durden was literally "caught in the act" of stealing the wire. The State also had quite a bit of evidence that cast doubt on the veracity of Durden's version of events. Durden was found with a flashlight in his back pocket. This fact was important, because the wire had been stolen from Davis' business during the night and because Durden admitted it was daylight when he claimed to have found the wire. As the State pointed out in its closing argument, one does not normally need a flashlight during the daytime if he or she is heading to mow the church's lawn. One observes that since Durden walked the path where he said that the wheelbarrow was located and had not encountered it before, if the copper had been abandoned, it had not been very long abandoned. Durden had admittedly been previously convicted

11

of theft.[4]  There was disagreement among the witnesses regarding whether Durden actually walked toward the police officer on the morning in question or whether Durden instead changed his direction of travel once he caught sight of the officer.  The officer's version, if believed, suggests that Durden had evidenced guilt by trying to evade contact with the officer that morning.  *See, e.g.*, *Figueroa v. State*, 250 S.W.3d 490, 503 (Tex. App.—Austin 2008 pet. ref'd), *cert. denied*, __ U.S. __, 129 S.Ct. 1340 (2009) (appellant's attempt to flee before his arrest was fact from which jury could have inferred consciousness of guilt).  Davis testified that Durden had worked for him until the Fall of 2007.  Davis testified he noticed markings indicating the wire was dragged under his fence.

Both the State and Durden's trial counsel spent substantial portions of their respective closing arguments addressing whether Durden's version of events was reasonable and whether it supported the conclusion that Durden lacked the requisite intent to steal property.  At trial, there was never any question whether Durden was in possession of the purloined copper; rather, the only truly disputed issue was his state of mind while taking the wire into his possession and keeping it under his control.  In fact, the issue of Durden's intent was arguably the *sole* contested issue during the entire trial.

The duty to conduct a harm analysis lies solely on the shoulders of a reviewing court; the burden is not on the parties to demonstrate it.  *Warner v. State*, 245 S.W.3d 458, 463–64 (Tex. Crim. App. 2008); *Johnson v. State*, 43 S.W.3d 1, 4–6 (Tex. Crim. App. 2001).  The question that arises

---

[4]Durden admitted on direct examination that he had been previously convicted of "buying stolen property" in cause number 06-0183X, in which he received a six-month sentence.  *See* TEX. R. EVID. 607, 609.

12

here in the context of *Almanza* when there is preserved charging error is, "What is meant by 'some harm?'" That question has been answered.

> We now expressly find that, in the context of *Almanza,* supra, and Article 36.19, supra, the presence of *any* harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction. Cases involving preserved charging error will be affirmed only if *no* harm has occurred. *See id*. at 171 ("In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.").

*Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). The harm must be actual and not just theoretical. *Almanza*, 686 S.W.2d at 174.

Our review of the contested and uncontested evidence (including the varying weights of such evidence) discussed above, the entire jury charge (which included the requirement that the jury conclude Durden intentionally or knowingly committed the charged crime), the jury arguments for both sides, and the parties' briefs on appeal lead us to conclude Durden suffered no *actual* harm as a result of the trial court's error in denying Durden's mistake-of-fact jury instruction. As we observed in *Sands*, the record here reveals—at best—theoretical harm, but it does not reveal evidence of the actual harm required by *Almanza* and *Arline*. We find no reason to abandon the analysis and precedent established by this Court in *Sands*.

In *Sands,* we analyzed a factual situation and found the trial court erred in failing to submit a mistake-of-fact instruction, but such error was not harmful. We stated:

> In the present case, the jury came face-to-face with making a decision of whether Sands intentionally and knowingly possessed methamphetamine. This puts squarely in point the question of whether Sands mistakenly believed that the contents

13

of the syringe contained vitamins or he intentionally and knowingly possessed methamphetamine. In this situation, Sands was not denied the right to have the jury consider the defense that he raised concerning a mistake-of-fact defense. Therefore, we find that the failure to submit the requested instruction on mistake of fact was not harmful error.

*Sands*, 64 S.W.3d at 496.

Likewise, here, the jury was instructed that in order to find Durden guilty, it must find that Durden appropriated property "with the intent to deprive the owner of the property . . . ." As in *Sands*, this requirement allowed the jury to consider whether Durden mistakenly believed that the copper wire was abandoned or he took the property with the intention of depriving the owner of that property. Durden had his day in court. The jury heard Durden testify. His attorney cross-examined the State's witnesses and presented a vigorous closing argument. Ultimately, the jury disbelieved Durden's testimony that he lacked the specific intent to commit this theft.

While in some instances the denial of a proper defensive instruction would cause harm by preventing the defendant from arguing an issue, i.e., self-defense, here, Durden fully argued that he thought the wire was abandoned and that he had no intent to deprive the owner of the property ("did the state prove beyond a reasonable doubt that he took these wires from Paul Davis with the intent to deprive him of his property. That's what you have to decide."). While the trial court did err by denying the mistake-of-fact instruction, the jury's verdict inferentially resolved the issue that would have otherwise been required via the requested instruction. It would require us to resort to mere conjecture to conclude, on this evidentiary record, that Durden suffered any actual harm. The

14

standard of review to assess jury charge error requires, however, more than mere conjecture. We conclude Durden suffered no actual harm as a result of the trial court's error.

We affirm the trial court's judgment.


Jack Carter
Justice


DISSENTING OPINION

As pointed out by the majority, the defense of mistake of fact is recognized and described in the Texas Penal Code.[5] When the evidence at trial raises it, the trial court is instructed to have the jury charge include instructions "distinctly setting forth the law applicable to the case."[6]

Avoiding the redundancy of repeating the test in *Almanza*,[7] I am in agreement with the majority that the trial court erred in refusing the defense's request to include an instruction on mistake of fact. I further concur that there must only be "some harm" occasioned to a defendant by

---

[5]TEX. PENAL CODE ANN. § 8.02 (Vernon 2003).

[6]TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007).

[7]*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

15

such a preserved nonconstitutional charging error before a reversal is required.[8] My difference with the majority lies in the definition of "some harm" as it applies to the case before us here.

The majority points out that the mistake-of-fact defense was present throughout the trial, commencing at the voir dire, continuing through the evidence, and argued in summation. In fact, Durden never contested that the wire had been stolen. He admitted that he was in possession of the stolen copper wire and that it did not belong to him. The sole question for the jury to determine was whether he had taken his course of action under the mistaken impression that he was justified in taking it from the place he alleged he had found it. It is because this point was so fully covered in all phases of the trial that the majority has determined that Durden suffered no harm when the trial court refused his request for the inclusion of an instruction of a mistake-of-fact defense.

Apparently, defining what is meant by "some harm" is as difficult as nailing Jell-O to a tree; although one might think that it is firmly nailed down, it slithers off the nail. Recognizing the elusive nature of that term, *Almanza* instructs that looking at the full record "may illuminate the actual, not just theoretical, harm to the accused." *Almanza*, 686 S.W.2d at 174. Distinguishing between the actual versus the theoretical harm is the balancing act which the appellate courts must perform.

---

[8]"Preserved jury charge error is evaluated under *Almanza*'s 'some harm' standard unless we determine that the error is constitutional in nature, in which case the 'beyond a reasonable doubt harmless' standard would apply." *Williams v. State*, 273 S.W.3d 200, 225 (Tex. Crim. App. 2008).

16

In looking at the word "theoretical," we are met with the definition "existing only in theory." MERRIAM-WEBSTER COLLEGIATE DICTIONARY 1296 (11th ed. 2003). Backing up a step, the closest-fitting definitions of "theory" are "The analysis of a set of facts in their relation to one another," "abstract thought," "the general or abstract principles of a body of fact," "a plausible or scientifically acceptable general principal or body of principle," "a hypothesis assumed for the sake of argument or investigation," or "an unproved assumption." *Id.* Since re-creation of the exact trial as it happened (but ameliorating an error which has occurred) is totally impossible, theoretical analysis is precisely what appellate courts must do in any harm analysis. We must often postulate things that did not occur in order to posit an outcome. Accordingly, in appears that the *Almanza* explanation that we are not to look at theoretical harm is not very helpful in determining whether "some harm" exists. One comes to the conclusion after parsing the words that are used in *Almanza* in describing what is to be done in review on appeal, if we ignored all theoretical harm, we could almost never find that harm resulted, no matter how egregious the circumstances might be.

Rather more helpful is the discussion of what is meant by "some harm" found in *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986), in which the Texas Court of Criminal Appeals stated that *some* harm meant *any* harm (emphasizing both words to reflect that they are synonyms when determining the amount of scrutiny to be applied).

Applying that yardstick, we now look at Durden's entire trial. As pointed out by the majority, the entire case presented by Durden in defense was that he was mistaken and, therefore, because of

17

his mistake, he did not possess the necessary *mens rea* to have committed the crime of theft. From the beginning of the trial until its end, this was the thrust of the controversy. Due to its importance and the large proportion of the trial which was consumed by it, the majority believes that the issue of that defense was adequately covered and explained and, therefore, Durden suffered no harm.

For the very same reason, I believe that Durden did suffer harm. The centrality of the question of the mistake-of-fact defense in the trial is undeniable. A jury is not nearly so precise about words as judges and lawyers; such things as "with the intent to deprive" might not be as concrete to a juror as to a trained legal specialist. An instruction in the charge which would have explained the mistake-of-fact defense would have served to magnify its importance and the viability of the defense which had been mounted. Durden could have then correctly argued on closing that the jury must first have found that there was no mistake of fact before it went on to discuss whether the State had met its burden of proof on each of the elements of the charged offense. He could further have used the requested instruction to emphasize in closing argument that it was not just his opinion that the jury could not find guilt if there had been a mistake of fact, but that the court had instructed it precisely that mistake of fact was a valid defense.

When the law requires that an instruction be given, when the defendant calls that law to the attention of the trial court (apparently while reading from the statute describing the defense itself), and when the trial court refuses the requested-but-proper instruction, we should not look at the potential harm with a cavalier eye, but we should rather look to see if "any" harm resulted. Although

18

it may be simply theoretical to attempt to crawl into the minds of the jurors to determine whether the additional emphasis the requested instruction would have placed on Durden's sole defense to the charge, I cannot help but believe that there was "some" harm which resulted. The question of whether it would have tipped the scales in his favor is a question we are neither required to answer nor is anyone now capable of answering.[9]

The most cogent reason to reject Durden's appeal is this Court's ruling in *Sands v. State*, 64 S.W.3d 488, 494 (Tex. App.—Texarkana 2001, no pet.), which should be considered precedent here. It is our duty to give strong adherence, when possible, to the doctrine of stare decisis when analyzing the merits of a case due to the value which consistency of the laws provide. Our own Texas Court of Criminal Appeals has observed that "we should take into account the interests underlying the rule of *stare decisis*: Often it is better to be consistent than right." *Malik v. State*, 953 S.W.2d 234, 236 (Tex. Crim. App. 1997). The doctrine of *stare decisis* is a bulwark of Anglo-American jurisprudence because it serves the important purpose of ensuring "the stability of the law." *Lawrence v. Texas*, 539 U.S. 558, 577 (2003). On the other hand, we need to observe that "*Stare decisis* is not an inexorable command; rather, it 'is a principle of policy and not a mechanical formula of adherence to the latest decision.'" *Payne v. Tennessee*, 501 U.S. 808 (1991). Although the majority opinion here is well reasoned and I do not suggest that it is not rationally founded, a blind adherence to stare

---

[9]Had this issue been raised in a hearing on a motion for new trial, a juror would have been prohibited from testifying "to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment." TEX. R. EVID. 606(b).

19

decisis in all cases reminds one of Einstein's definition of insanity: doing the same thing over and over again and expecting different results. Stare decisis is not a command to repeat the mistakes of the past. By finding that there is no harm in this case, it places the alert and objecting defendant on virtually the same plane as the defendant who sleeps through his objections at trial; here, the trial court was timely alerted to the mistake-of-fact defense and the request for an instruction involving it. In both the *Sands* case and in this matter, a finding that no harm resulted from refusing to submit an instruction that was the core of the defense is tantamount to our encouraging the disregard of the statute which directs that such an instruction be included when raised by the evidence.

In these circumstances, since I believe that Durden suffered some harm from the error, I would reverse.

Bailey C. Moseley
Justice

Date Submitted: April 24, 2009
Date Decided: May 15, 2009

Publish

20