OPINION

 

Nos. 04-09-00684-CR

                                                             
04-09-00685-CR

                                                                

Keith ALFARO,

Appellant

 

v.

 

The STATE of
Texas,

Appellee

 

From the County Court
at Law No. 6, Bexar County, Texas

Trial Court Nos. 223315,
223316

Honorable Phil
Chavarria, Jr., Judge Presiding

 

Opinion by:   Karen Angelini, Justice

 

Sitting:                     Karen Angelini, Justice

Phylis J.
Speedlin, Justice

                     Rebecca
Simmons, Justice

 

Delivered and
Filed:  October 6, 2010

 

AFFIRMED

 

Keith J. Alfaro was
charged with assault with bodily injury, resisting arrest, and evading arrest.
The jury found him not guilty on the assault with bodily injury charge, but
guilty on the resisting arrest and evading arrest charges. Alfaro appeals his
convictions and, in one issue, contends the trial court erred in denying his
requested charge on the defense of mistake of fact. We find no error and affirm
the trial court’s judgments.

Standard
of Review

 

In reviewing jury charge
error, we first determine whether there is error in the jury charge. Durden
v. State, 290 S.W.3d 413, 415 (Tex. App.—Texarkana 2009, no pet.). If we
find error, then we determine whether the error was the subject of a timely
objection in the trial court. Id. If there was a timely objection, as
there was in this case, then we reverse if the error was calculated to injure
the rights of the defendant. Id. (citing Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006) and Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). 

Mistake of fact
Defense to Resisting and Evading Arrest

 

The Texas Penal Code
provides that “[it] is a defense to prosecution that the actor through mistake
formed a reasonable belief about a matter of fact if his mistaken belief
negated the kind of culpability required for commission of the offense.” Tex. Penal Code Ann. 
§ 8.02(a) (West 2003). 

“[A]n accused has the
right to an instruction on any defensive issue raised by the evidence, whether
that evidence is weak or strong, unimpeached or contradicted, and regardless of
what the trial court may or may not think about the credibility of the defense.”
Hamel v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). The
defendant’s testimony alone may be sufficient to raise the issue and warrant a
requested defensive instruction. Hayes v. State, 728 S.W.2d 804, 807
(Tex. Crim. App. 1987).  In reviewing whether the trial court erred in refusing
to submit a requested defensive instruction, we must examine the evidence
offered in support of that defensive issue in the light most favorable to the
defense. Durden, 290 S.W.3d at 416. When evidence from any source raises
a defensive issue, and the defendant properly requests a jury charge on that
issue, the trial court must submit the issue to the jury. Muniz v. State,
851 S.W.2d 238, 254 (Tex. Crim. App. 1993). 

With regard to the
offense of resisting arrest, the Texas Penal Code provides that “[a] person
commits an offense if he intentionally prevents or obstructs a person he knows
is a peace officer or a person acting in a peace officer’s presence and at his
direction from effecting an arrest, search, or transportation of the actor or
another by using force against the peace officer or another.” Tex. Penal Code Ann. § 38.03(a) (West 2003). With regard to the offense of
evading arrest, the Texas Penal Code provides that “[a] person commits an
offense if he intentionally flees from a person he knows is a peace officer
attempting lawfully to arrest or detain him.” Id. 38.04(a). 

At trial, Alfaro
requested the following instruction on mistake of fact as to both resisting
arrest and evading arrest:

           Therefore, if you believe
from the evidence that on the occasion in question the defendant, through
mistake, formed a reasonable belief that he was not “under arrest,” as that
term is used in the charge, or if you have a reasonable doubt thereof, then you
will find the defendant [n]ot [g]uilty.

 

The Evidence
Pertaining To Resisting And Evading Arrest

 

At trial, Tamara Vaughan
testified that on July 22, 2007, she was spending time at the community pool in
the Trinity Oaks subdivision where she lived. She was accompanied by several
family members. When Vaughan became bothered by the smell of a cigar, she asked
the man who was smoking the cigar, to put it out. The man smoking the cigar was
Alfaro, an off-duty city police officer. He was standing and talking on his
phone when she approached him. According to Vaughan, Alfaro argued with her and
used racial slurs. He then punched her in the face, and she fell to the ground.
She could not get up because he continued to punch her and choke her. At that
point, Vaughan’s cousin jumped on Alfaro’s back to try to get him off of
Vaughan. Alfaro then left the pool area. Vaughan and her family members got
into a car driven by Vaughan’s grandmother and began looking for Alfaro. They
did find him, and he told them he was a police officer and that he was going to
call the police. Vaughan testified that the police did arrive, and she showed
them her injuries. An ambulance then arrived and took her to the hospital. 

Vaughan’s cousin, Tylia
Hopkins, testified that she was at the swimming pool with Vaughan on the day in
question. She saw Vaughan approach Alfaro, who was smoking a cigar and talking
on his cell phone. Alfaro started yelling at Vaughan, and then he hit her in
the face. Hopkins then ran over and jumped on top of Alfaro as Alfaro was choking
Vaughan. Her grandmother then came to pick up the family members from the pool.
They drove to where Alfaro and another man were standing in a cul-de-sac. The
police arrived and they tried to arrest Alfaro.  

Vaughan’s grandmother,
Dina Bushrod, also testified about the events in question. She drove to the
swimming pool to pick up Vaughan and other family members. She saw that
Vaughan’s face was red and her lip was bleeding. After Vaughan and the other
family members got in the car, she began looking for Alfaro, the man who had
beaten Vaughan. She located him in a cul-de-sac behind the swimming pool.
Alfaro was standing there along with one or two other men. One of the other men
told her Alfaro was a police officer. Bushrod then went to look for a woman who
had witnessed the altercation at the pool. According to Bushrod, the police
then arrived. She gave a statement, and then the police talked to Alfaro.
Alfaro then turned around and left.     

           Bexar County Sheriff’s Deputy Jesse
Padilla testified that he responded to the incident in question. The dispatcher
informed him the incident involved an assault and an off-duty city officer.
When he arrived, Alfaro was standing on a sidewalk adjacent to the pool and was
waving him down. Alfaro said he had called the incident in and was a city
officer. A car then drove up, and Alfaro told Deputy Padilla the other person
involved in the incident was in the car. Deputy Padilla then asked Alfaro to
tell him about the incident. According to Deputy Padilla, Alfaro reported he
had been at the community pool when a female approached him and began to yell
at him because he was smoking a cigar. Alfaro told Deputy Padilla that he told
the woman “that she didn’t know who the f— she was talking to, that he was a f—ing
Po-Po and that she just needed to go back to the East Side where she belonged.”
According to Deputy Padilla, Alfaro said that because the woman would not back
up, he walked up to her and punched her in the face. Further, once she dropped
to the ground, he got on top of her and began to punch her several times. When
Deputy Padilla asked Alfaro what the woman did to provoke him, he said,
“Nothing.” Deputy Padilla testified that he could not believe what Alfaro was
telling him about the incident so he asked Alfaro to repeat what he had said.
Alfaro then repeated what had happened, word-for-word. According to Deputy
Padilla, he decided to get all the facts before making an arrest. A Hill
Country Village police officer arrived, so Deputy Padilla asked that officer to
stay with Alfaro while he questioned the other people involved in the incident.


Deputy Padilla walked
over to Vaughan, Hopkins, and Bushrod. Vaughan and Hopkins appeared physically
shaken, they were crying, and their hair was in a mess. Vaughan’s blouse was pulled
loose like she had been in a struggle. Her eyes were bloodshot, and she had
been crying. There was a bruise on her face and forehead and redness to her
throat. He then called for medical assistance for Vaughan. Deputy Padilla
testified that he called his supervisors because a city officer was involved,
and he wanted them to make the call on the arrest. After talking with his
supervisors, he felt the appropriate action was to arrest Alfaro. After his
supervisors advised him to arrest Alfaro, he walked over to Alfaro and
proceeded to place him under arrest. According to Deputy Padilla, he told
Alfaro he was placing him under arrest. Alfaro asked what he was being arrested
for, and Deputy Padilla responded, “For assault.” Deputy Padilla stated to
Alfaro that Alfaro had said he had punched Vaughan. At that point, according to
Deputy Padilla, Alfaro changed his story and said he had hit Vaughan because he
felt threatened. Deputy Padilla then tried to restrain Alfaro. He grabbed
Alfaro’s right wrist in an attempt to handcuff Alfaro. At that point, Alfaro said,
“You’re not going to f—ing arrest me. You’re not going to f—ing put me in that patrol
car, and there’s no f—ing way you’re going to get me in that patrol car.”
Alfaro then jerked away from Deputy Padilla and pushed his arm toward Deputy
Padilla. The deputy lost his balance off the sidewalk and landed in the street,
still standing. Alfaro then jerked away from Deputy Padilla. At first, Alfaro
began to run away, but then he stopped. According to Deputy Padilla, he told
Alfaro to stop and told him he was making matters worse. Alfaro then proceeded
down the cul-de-sac at a slow jog. As Deputy Padilla began walking toward
Alfaro, Alfaro picked up his pace and began to run. He ran into a house, which
Deputy Padilla later discovered was Alfaro’s residence. Deputy Padilla followed
Alfaro, and they communicated through the window. Deputy Padilla told Alfaro to
step out and turn himself in. Alfaro again said Deputy Padilla was not going to
arrest him. According to Deputy Padilla, he backed away from the house because
he was concerned that Alfaro might have weapons in the house. He called his
supervisors and advised them of the situation. Deputy Padilla’s supervisors
arrived at the scene and decided it was safer to leave the location and obtain
an arrest warrant. 

           Officer Kim Fieldhausen, who was
employed by Hill Country Village at the time of the incident, testified that he
responded to the incident in question as a back-up to the Bexar County
Sheriff’s Office. When he arrived, he made contact with Deputy Padilla. He saw
Vaughan sitting on the curb, and he noticed her face was red and swollen.
Officer Fieldhausen was requested to get identification information from
Alfaro, so he proceeded to do so. Alfaro explained to Officer Fieldhausen that
he had been at the pool when a lady started arguing with him and pushed him.
Then another female jumped on his back, and Alfaro said he was trying to defend
himself. Alfaro identified himself as a police officer. Deputy Padilla then
told Officer Fieldhausen he wanted to talk to Alfaro. According to Officer
Fieldhausen, when Deputy Padilla started to handcuff Alfaro, Alfaro swung his
arm away and told Deputy Padilla he was not going to arrest him. Alfaro then
started running, and the officers ran after him. As Officer Fieldhausen was
running after Alfaro, he yelled, “Stop” at least twice. Alfaro did not stop,
but instead ran into a house. A sheriff’s office lieutenant arrived and told
the officer to leave the scene. 

           Bexar County Sergeant Yvonne Vann
testified that on the day of the incident in question she spoke with Deputy
Padilla by telephone and determined that she needed to go to the scene herself.
Before she arrived, she told Deputy Padilla to detain Alfaro until she arrived
so she could better assess what was going on. Based on the information she had,
she felt there was a need to make an arrest. When she arrived, Sergeant Vann
spoke with Deputy Padilla. She did not speak with Alfaro because he was inside
his residence. She knocked on the door and spoke to him, but he never
responded. After speaking with her supervisors, the decision was made to
de-escalate the scene and leave. An arrest warrant was issued the following
day. 

           Lieutenant Scott Bell with the San
Antonio Police Department testified that he was involved in a three-way
telephone conversation with Alfaro and Sergeant Trevino on the day of the
incident. According to Lieutenant Bell, Alfaro was under a lot of stress at the
time and was concerned about what he should do. Alfaro did not tell Lieutenant
Bell that the sheriff’s office had attempted to place him under arrest. Alfaro
said he had been compliant in identifying himself and then walked to his house.
From what Lieutenant Bell heard, it seemed there was a little confusion as to
what was exactly happening, but there was never any kind of physical
altercation or attempt to take custody of Alfaro or any resistance by Alfaro to
being arrested. Lieutenant Bell eventually spoke with Bexar County Sheriff
supervisors, and the decision was made to leave the scene. Lieutenant Bell was
never told that Alfaro had a struggle or altercation with one of the deputies. 

           Alex Tovar, a neighbor and friend of
Alfaro’s, testified he was in his yard when the incident occurred. He observed
Alfaro and his family returning from the pool. Alfaro’s family went inside
their home, but Alfaro remained outside with Tovar until the police arrived.
When the police arrived, they first spoke to Vaughan and her family. Alfaro
then approached the police and spoke to them. Alfaro was talking on his cell
phone and walked away from the police officers. The officers did not attempt to
subdue him or chase him. Alfaro then went to speak to the officers again.
According to Tovar, Alfaro then walked down the sidewalk to his house. The
sheriff’s deputy followed him. Neither the deputy nor Alfaro was running,
jogging, or walking fast. The officer gave no commands to stop and could have
easily caught Alfaro if he had wanted to. Alfaro went inside his house, and the
officer knocked on the door and asked Alfaro to come outside. 

           Alfaro testified that at the time of
the incident in question he was a robbery detective with the San Antonio Police
Department. According to Alfaro, he and his family were at the neighborhood swimming
pool, and Alfaro was talking on his cell phone, when Vaughan walked toward him
aggressively. She stomped up to him, got directly in his face, and said,
“You’re going to put that f—ing cigar out.” As he tried to back away, she
continued to confront him. They began to argue, and Vaughan tried to punch him.
Alfaro then punched Vaughan on her cheek. He tried to subdue her, but nothing
worked. They tussled and then fell to the ground. She continued to punch him,
and he was trying to calm her down. At that point, another female jumped on his
back. After they got up off the ground, Vaughan came at him again and they got
into another wrestling match. Alfaro was able to fend Vaughan off, but she
started making death threats at him. Alfaro and his family then left the pool
area. His family went in the house, but he remained outside. Alfaro then called
the police and told them he had been assaulted at the pool. 

When Deputy Padilla
arrived, Alfaro told him what had happened. Deputy Padilla then left to go
speak with Vaughan and her family. Officer Fieldhausen then arrived, and Alfaro
spoke with him. According to Alfaro, Deputy Padilla never tried to detain him,
never tried to arrest him, never put his hands on him, and never told Alfaro he
was going to arrest him. Deputy Padilla said he would contact his supervisor,
and Alfaro agreed to contact his own supervisor. Alfaro then walked home. No
one tried to stop him or arrest him. After he went into his house, Deputy
Padilla came to his door and told Alfaro he was making it hard on himself.
Alfaro was on the phone with Sergeant Trevino and told Deputy Padilla that
Sergeant Trevino would like to talk to him. Deputy Padilla then wrote down
Sergeant Trevino’s number, and Alfaro never saw him again. Alfaro did not
believe he committed any offense. The next thing Alfaro knew everyone was gone.
The following morning, Alfaro was notified that he needed to go downtown and
turn himself in and he did so.       

Discussion

 

On appeal, Alfaro
contends he was entitled to a jury instruction on mistake of fact.
Specifically, Alfaro argues the degree of culpability necessary to obtain a
conviction on evading arrest required the State to show Alfaro fled from Deputy
Padilla knowing Deputy Padilla was a peace officer attempting to lawfully
arrest and detain him. With regard to the resisting arrest allegation, Alfaro
urges the degree of culpability necessary to obtain a conviction required the
State to show Alfaro intentionally prevented and obstructed Deputy Padilla from
arresting Alfaro. In other words, according to Alfaro, he was entitled to a
mistake of fact instruction since there was some evidence that Alfaro acted
under the mistaken belief that Deputy Padilla was not trying to arrest him.

           The State counters that the evidence
before the trial court did not raise the defense of mistake of fact because
Alfaro made no claim that he was mistaken about any fact. Instead, according to
the State’s argument, Alfaro claimed Deputy Padilla did not attempt to arrest
him, never told him he was under arrest, never touched him, and further, that
he never ran away from Deputy Padilla. In short, the testimony is conflicting—Deputy
Padilla testified he tried to arrest Alfaro and that Alfaro resisted and ran
away, whereas Alfaro testified Deputy Padilla never tried to arrest him, he
never resisted arrest, and he did not run away from Deputy Padilla. We agree
with the State that the evidence did not raise a mistake of fact on Alfaro’s
part but that there was merely conflicting evidence. 

           The mistake of fact defense would only
apply if Alfaro’s mistake affected his culpable mental state regarding
commission of the offenses. See Durden, 290 S.W.3d at 416 (concluding
the trial evidence required a defensive instruction on mistake of fact). For
instance, in Durden, the accused was charged with theft of copper wire. According
to the accused, he was walking across a vacant lot when he found a wheelbarrow
filled with copper wire. Id. He testified he thought the wire was
abandoned. Id. The Texarkana court found that the accused’s mistaken
belief that the wire was abandoned was some evidence that, if believed, would
negate the element of theft that the accused intended to deprive the rightful
owner of the property. Id. at 419.

           Similarly, the Court of Criminal Appeals
found that the accused was entitled to a mistake of fact instruction where he
was charged with unauthorized use of a motor vehicle, but claimed that an
acquaintance had given him the keys so he could borrow the vehicle. Lynch v.
State, 643 S.W.2d 737, 738 (Tex. Crim. App. 1983). In other words, because
he mistakenly believed he had permission to drive the vehicle, he was entitled
to a mistake of fact instruction. See id.

           As previously stated, Alfaro does not
claim he mistakenly believed Deputy Padilla did not try to arrest him, but
rather that Deputy Padilla, in fact, did not try to arrest him. Whether
Deputy Padilla did or did not attempt to arrest Alfaro was a fact issue for the
jury to decide.  

           Accordingly, we find no error in the
trial court’s refusal to provide the jury with a mistake of fact instruction.
We affirm the trial court’s judgments. 

Karen Angelini, Justice

 

PUBLISH