

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00204-CR

_____

GARY POTTER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 24396

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Gary Potter was convicted by a jury of theft of more than $500.00 but less than $1,500.00, an offense which was a state-jail felony because he was also charged with and found having had two prior convictions for theft. *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(D) (West Supp. 2011). The offense of which Potter was found guilty involved two antique oil company signs that were located on the premises of a job site where Potter was working, signs which he removed and sold. After the jury convicted him, Potter elected to have the trial court assess punishment, a punishment which was set at two years' confinement. On appeal, Potter argues that the evidence is legally insufficient to support the conviction and that he received ineffective assistance of counsel.

**(1)     The Evidence Is Sufficient**

Potter's first issue complains that the evidence is legally insufficient to support the conviction. Potter maintains that the signs were not stolen at all, but were part of the consideration given in a contractual relationship; with that premise in mind, Potter maintains that the State only established the existence of a civil property dispute and not a crime.

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review

2

focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Evidentiary sufficiency is measured against a "hypothetically correct" jury charge which includes (1) allegations that form an integral part of an essential element of the offense, including allegations that are statutorily alternative manner and means, and (2) material variances. *Mantooth v. State*, 269 S.W.3d 68, 76 (Tex. App.—Texarkana 2008, no pet.). The State had the burden to establish that (1) Potter, (2) with intent to deprive Michael Anderson of property,[1] (3) unlawfully appropriated property, (4) without the effective consent of Anderson,[2] (5) had previously been convicted of theft on two occasions, and (6) the property was worth more than $500.00 but less than $1,500.00. TEX. PENAL CODE ANN. § 31.03 (West Supp. 2011).

---

[1] Although noting the name of the owner is not an element of theft, the Texas Court of Criminal Appeals has held that the name of the owner must be alleged and that the State is bound by its allegation. *See Byrd v. State*, 336 S.W.3d 242 (Tex. Crim. App. 2011) (concluding State bound by its allegation because name of owner was material variance).

[2] Because the State did not allege any particular statutory manner of commission, the hypothetically-correct jury charge would include all the alternative methods of commission contained in the theft statute. *See Gollihar v. State*, 46 S.W.3d 243, 254–55 (Tex. Crim. App. 2001); *Curry v. State*, 30 S.W.3d 394 (Tex. Crim. App. 2000); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *cf. Geick v. State*, 349 S.W.3d 542, 543 (Tex. Crim. App. 2011) (in theft case, State bound by alleged statutory definition).

3

The victim, Anderson, was renovating a small cabin he had recently purchased in rural Lamar County. During the first week of March 2011, Anderson hired Jim Campbell to perform the renovation. Under their agreement, Anderson was to pay Campbell $7,000.00, plus the cost of materials, and it was the responsibility of Campbell to hire and pay for the necessary labor. Potter began work on the job as Campbell's employee. As work progressed, although Campbell was responsible for paying the men who worked for him, some of the workers believed they were not receiving the pay they had been promised.[3]

In mid-April 2011, Potter's landlord, Dennis Nelms, purchased two antique oil advertising signs from Potter, paying Potter $250.00. Nelms testified that Potter had told him he was given the signs in exchange for his work on Anderson's property. Nelms checked with another of his tenants, David Kelly (who, like Potter, had also worked on Anderson's property) and was told by Kelly that Anderson had been giving away things from the property.

Potter eventually told Anderson that Campbell had not been paying any of the men. Anderson confronted Campbell on May 7, 2011, and according to Anderson, Campbell "had no defense for the accusations. He had not been paying them." Anderson terminated the agreement with Campbell and then contracted with Potter to complete the renovation, agreeing to pay Potter $1,200.00. During the course of the next several weeks, Anderson paid Potter $700.00 and

---

[3]Although admitting he promised to pay at least some of the workers by the hour, Campbell testified he would "split" the money with the workers after he deducted his expenses.

entered into a separate agreement wherein he gave Potter a pool table in exchange for Potter's work in repairing a shed on his property.

On May 16, 2011, Potter (who had been imprisoned after having been convicted of possession of marihuana) failed to show up for work, so Anderson terminated Potter and retained someone else to complete the project. Approximately three days after terminating Potter, Anderson reported to the police that two antique signs were missing. After the police discovered the sale of the signs to Nelms, Potter was interrogated by Sergeant Joel Chipman of the Lamar County Sheriff's Office. Potter told Chipman that the signs he had sold to Nelms did not come from Anderson's cabin but, rather, the signs had originated from a house in Bagwell where he and his brother once lived. Anderson, though, positively identified the signs sold by Potter to Nelms as the missing signs.[4]

The record contained conflicting evidence concerning whether the signs had been placed on a trash pile from which Potter had permission to take items. Anderson testified it was understood that anything on the "burn pile"[5] could be taken by the workers. Anderson admitted

---

[4]One sign was a Gulf sign painted orange and white, which was approximately six feet in diameter. The other sign was a Cosden Oil Company Sign painted red and white, which was approximately four feet in diameter. Pictures of the signs were introduced as a State's exhibit.

[5]Throughout the renovation of Anderson's cabin, the men working on the house would put scrap metal, used wiring, and other refuse into a trash pile or "burn pile" located in the front yard of the cabin.

5

that he had given Potter a pool table,[6] and they discussed Potter taking an old refrigerator. At trial, Kelly testified that he had removed the signs from the cabin and had placed the signs in a trash pile. Potter's brother, Jerry Potter, testified that at least one of the signs had been placed in the trash pile and that Anderson made no mention of the signs when he gave them instructions to clean out the cabin. In contrast to that testimony, Campbell testified that he had helped Anderson move the signs into the "barn." Anderson denied that the signs were placed in the trash pile, but admitted the signs were originally placed in the front yard until he had stored them in the barn.

Potter argues that the evidence of theft was insufficient because a bona fide dispute existed as to the ownership of the property. Potter cites *Roper v. State*, 917 S.W.2d 128, 132 (Tex. App.—Fort Worth 1996, pet. ref'd) ("Theft convictions resulting from otherwise civil contractual disputes may warrant reversal for insufficient evidence where there is no evidence supporting the requisite criminal intent."), and *Bokor v. State*, 114 S.W.3d 558, 560 (Tex. App.—Fort Worth 2002, no pet.), in support of his argument. In *Bokor*, the Fort Worth Court of Appeals stated that "[i]f a bona fide dispute exists as to the ownership of the property, then the evidence is legally insufficient to sustain a theft conviction." *Id.* In *Roper*, the defendant sold some hay for his employer but, claiming he was owed unpaid wages, failed to tender the received payment to the employer. *Roper*, 917 S.W.2d at 132. Because the terms of the defendant's contract with his employer were unclear, the court held that the evidence was legally insufficient. *Id*.

---

[6]Kelly testified Anderson gave the copper wire out of the house to Campbell's father-in-law, gave a pool table away, gave a 1970s "two-bedroom trailer home" away, and other "small" stuff away. Jerry Potter testified he had hauled off three loads of metal which he sold to a metal salvage yard.

6

To the extent the defense interprets *Bokor* and *Roper* to hold any evidence of a contract dispute renders the evidence legally insufficient, we disagree with such an interpretation. While a property dispute may negate the requisite criminal intent, the focus of our inquiry is not on whether a property dispute existed, but rather whether the requisite criminal intent exists. The issue in such a circumstance is whether the contractor had the requisite criminal intent to unlawfully deprive. *See Ehrhardt v. State*, 334 S.W.3d 849, 854 (Tex. App.—Texarkana 2011, pet. ref'd). We have recently explained, because a contractual relationship typically involves deprivation of property, the focus in such cases is whether the deprivation was unlawful, such as when it is obtained by deception. *See Higginbotham v. State*, 356 S.W.3d 584, 594 (Tex. App.—Texarkana 2011, pet. ref'd) (finding evidence sufficient because contractor's deception did induce victim's consent); *Ehrhardt*, 334 S.W.3d at 860 (finding evidence insufficient because contractor's deception did not induce victim's consent). The distinguishing feature between lawful acquisitive conduct from theft is the intent to acquire without effective consent at the time of the deprivation. *Id.* at 854.

While the contract disputes in *Bokor* and *Roper* negated the requisite intent as a matter of law, the requisite criminal intent in this case is not negated as a matter of law. Potter advances three arguments: 1) Anderson and Potter explicitly bargained for the sign, 2) the sign had been placed on the trash pile and Anderson had consented to removal of anything from the trash pile, and 3) the sign had been placed on the trash pile and the items taken from the trash pile constituted

7

consideration for the work performed on the cabin. Nelms' testimony that Potter claimed he was given the signs in exchange for his work on Anderson's property is the only evidence in support of the first argument. The jury, though, was entitled to believe Anderson's denial that the signs had never been explicitly bargained for. A rational juror could have also rejected the second and third arguments. Anderson denied that the signs were ever placed on the trash pile. The jury could have believed Anderson and concluded the signs were never placed on the trash pile. Even if the jury believed the signs had been placed on the trash pile,[7] the jury could have concluded, based on Campbell's testimony that he helped Anderson move the signs to the barn, Anderson's gratuitous[8] consent had been withdrawn before Potter's acquisition of the signs.

A rational jury could have concluded that Potter unlawfully deprived Anderson of the signs. The credibility of witnesses is the sole province of the jury, and we "must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper*, 214 S.W.3d at 13 (quoting *Jackson*, 443 U.S. at 318–19); *see Ehrhardt*, 334 S.W.3d at 857. The jury was entitled to believe Anderson's testimony that he never consented to Potter exercising control over the signs and, in doing so, conclude that Potter possessed the requisite criminal intent. Further, Potter's

---

[7]We note Kelly testified that both signs had been placed on the trash pile and Potter testified one sign had been placed on the trash pile. Campbell testified, "[O]ne of the signs was laying in the trash and one of the signs was on a metal stand."

[8] The record does not contain any evidence Anderson's consent to removal of items from the trash pile had been bargained for. All of the evidence indicates Anderson's consent to the removal of items from the trash pile was gratuitous, rather than bargained-for consideration.

8

statements when interrogated by the police could be interpreted as an indication of consciousness of guilt. A rational juror could have concluded Potter lied to the police because he was aware that Anderson did not give his consent to take the signs. Although we may not have reached the same decision, a rational juror could have found Potter guilty beyond a reasonable doubt. The evidence is legally sufficient.

**(2)     The Record Does Not Establish Ineffective Assistance of Counsel**

In his second issue, Potter claims that he received ineffective assistance of counsel. Potter argues his trial counsel rendered deficient performance by failing to request a "mistake in fact" jury instruction, by eliciting evidence of Potter's imprisonment, by failing to object to evidence of Potter's criminal history, and by failing to seek a limiting instruction concerning Potter's previous convictions and arrests. Potter argues these deficiencies create a reasonable probability that, but for counsel's error, the result would have been different.

The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on this claim, an appellant must prove by a preponderance of the evidence (1) that his counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense. *Id.*; *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the appellant must prove that the attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of

9

the trial would have been different. *Ex parte Martinez*, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686. The ineffectiveness of counsel is a matter that must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Smith v. State*, 51 S.W.3d 806, 813 (Tex. App.—Texarkana 2001, no pet.).

Potter cites *Durden v. State*, 290 S.W.3d 413, 419 (Tex. App.—Texarkana 2009, no pet.), for the proposition that he was entitled to a mistake in fact instruction. Although Potter was entitled to such an instruction,[9] we cannot conclude trial counsel was ineffective for failing to request it. In *Posey v. State*, the Texas Court of Criminal Appeals noted, in dicta, the decision to request a mistake of fact instruction was strategic.[10] *Posey*, 966 S.W.2d at 62.

Trial counsel may have strategically chosen not to request a mistake in fact instruction. The mistake in fact instruction requires a "reasonable belief" before negating the mental state element. *See* TEX. PENAL CODE ANN. § 8.02 (West 2011). The jury was instructed that Potter

---

[9]*Durden*, 290 S.W.3d at 419 (trial court erred in denying request for mistake in fact instruction).

[10]The Texas Court of Criminal Appeals held a trial court does not have a duty to sua sponte instruct the jury on unrequested defensive issues. *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (concluding failure to instruct on mistake of fact instruction not error under *Almanza*).

must have acted with "intent to deprive."[11]  Thus, if the mistake of fact defense had been requested, the jury charge would have instructed in one place that Potter must have acted intentionally and yet instructed in another place that Potter's belief must be a "reasonable belief." Trial counsel could have made a tactical decision not to request such a mistake in fact instruction in order to prevent inconsistent requirements from being presented to the jury.  Even if appellate counsel would not have made the same decision, a strategic decision does not result in ineffective assistance of counsel unless no competent attorney would have engaged in such a tactic.  Potter's trial counsel's performance was not deficient in this respect.

Potter also argues that his trial counsel was ineffective for having elicited evidence of Potter's criminal history and having failed to lodge an objection when the State introduced evidence of Potter's criminal history.  As argued by the State, anticipatory disclosure to reduce the prejudicial effect of prior convictions is a common defense strategy.  *See Martin v. State*, 265 S.W.3d 435, 443 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Fiest v. State*, 631 S.W.2d 769, 771 (Tex. App.—Beaumont 1982, no pet.).  Trial counsel could have reasonably decided to "soften the blow" of such revelations by eliciting such prior convictions before the State had the opportunity to do so and reveal them to the jury in a less prejudicial manner than the State would

---

[11]We note the charge does not define "intent."  The hypothetically-correct jury charge, though, would have instructed the jury:  "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result."  8 Michael J. McCormick et al., *Texas Practice:  Criminal Forms and Trial Manual* § 121.1 (11th ed. 2005).  Potter does not complain trial counsel was ineffective for failing to object to this defect in the jury charge.  Potter also does not argue that any jury charge error resulted in egregious harm.  *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

have done.  To be constitutionally deficient, the errors committed by trial counsel must be "'so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"  *Ex parte Nailor*, 149 S.W.3d 125, 130 n.15 (Tex. Crim. App. 2004) (quoting *Strickland*, 466 U.S. at 687).  Even if trial counsel's performance was deficient, the record does not establish a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different.  The performance was not so deficient that it undermined the proper functioning of the adversarial process.

Potter next complains that his trial counsel failed to object when the State introduced evidence that he was incarcerated on an unrelated charge at the time that the investigation in this case began.  The State argues that the record is silent concerning trial counsel's reasons, and it is conceivable that trial counsel could have been acting on trial strategy.  Where an appellate record is silent as to why trial counsel failed to take certain actions, we must presume that trial counsel's decision was reasonable unless "no reasonably competent defense attorney would have engaged in for any reason."  *Mata v. State*, 226 S.W.3d 425, 428–29 (Tex. Crim. App. 2007).  Trial counsel may have failed to object based on a strategy that the information explained why Potter did not finish the work on Anderson's cabin.  Whether such a strategy was a prudent one is not the issue.  Because a reasonably competent defense attorney might have engaged in such a strategy, the record does not establish deficient performance.

12

Finally, Potter argues that his trial counsel was deficient in failing to request a limiting instruction concerning the prior convictions. The State responds that it is conceivable that trial counsel did not wish to draw additional attention to the prior convictions by requesting inclusion of such instructions. Even if counsel was deficient for having failed to request a limiting instruction, the record does not establish a reasonable probability of a different outcome. The second prong of *Strickland* has not been met.

The record does not establish that Potter received ineffective assistance of counsel. Potter's second issue is overruled.

For the reasons stated, we affirm.


Bailey C. Moseley
Justice

Date Submitted:  May 2, 2012
Date Decided:    May 3, 2012

Do Not Publish

13